# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

————————————

**No. ACM 39948**

————————————

**UNITED STATES**
*Appellee*

v.

**Travis D. PULLINGS**
Staff Sergeant (E-5), U.S. Air Force, *Appellant*

————————————

Appeal from the United States Air Force Trial Judiciary

Decided 30 November 2021

————————————

*Military Judge:* Jason M. Kellhofer.

*Sentence*: Sentence adjudged on 27 May 2020 by GCM convened at Moody Air Force Base, Georgia. Sentence entered by military judge on 15 July 2020: Dishonorable discharge, confinement for 8 years, and reduction to E-1.

*For Appellant:* Captain David L. Bosner, USAF.

*For Appellee:* Lieutenant Colonel Matthew J. Neil, USAF; Major Brian E. Flanagan, USAF; Mary Ellen Payne, Esquire.

Before POSCH, RICHARDSON, and CADOTTE, *Appellate Military Judges*.

Judge RICHARDSON delivered the opinion of the court, in which Senior Judge POSCH and Judge CADOTTE joined.

————————————

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 30.4.**

————————————

RICHARDSON, Judge:

A general court-martial composed of a military judge sitting alone convicted Appellant, in accordance with his pleas and pursuant to a pretrial agreement (PTA), of two specifications of sexual assault of a child and three specifications of sexual abuse of a child, in violation of Article 120b, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 920b.[1,2] Appellant was sentenced to a dishonorable discharge, confinement for 13 years, total forfeitures,[3] and reduction to the grade of E-1. In accordance with the PTA, the convening authority approved confinement for only eight years. Additionally, the convening authority disapproved the adjudged forfeitures, and waived the automatic forfeitures for up to six months for the benefit of Appellant's dependent child. Finally, the convening authority denied, without explanation, Appellant's request to defer the reduction in grade.

Appellant raises three issues on appeal: (1) whether the convening authority erred by failing to provide his reasons for denying Appellant's requested deferment of reduction in grade;[4] (2) whether Appellant is due sentence relief for the conditions of post-trial confinement at the Lowndes County Jail in Georgia; and (3) whether Appellant is due sentence relief for the conditions of post-trial confinement at the Navy Consolidated Brig in Miramar, California.[5] We consider two additional issues not raised by Appellant: (4) whether the convening authority fully complied with the terms of the PTA; and (5) whether the

---

[1] All references in this opinion to the punitive articles of the Uniform Code of Military Justice (UCMJ) are to the *Manual for Courts-Martial, United States* (2016 ed.). The charges and specifications were referred to trial after 1 January 2019; accordingly, all references to the Rules for Courts-Martial (R.C.M.), and, except where noted, to the UCMJ, are to the *Manual for Courts-Martial, United States* (2019 ed.). *See* Exec. Order 13,825, §§ 3, 5, 83 Fed. Reg. 9889, 9889–90 (8 Mar. 2018).

[2] Appellant pleaded not guilty to three specifications of sexual abuse of a child, which the convening authority directed to be withdrawn and dismissed with prejudice as discussed in this opinion.

[3] In his sentence, the military judge announced "total forfeitures," and not that Appellant was to "forfeit all pay and allowances." *See Manual for Courts-Martial, United States* (2016 ed.), Appendix 11. As the convening authority did not approve adjudged forfeitures, we need not determine whether the adjudged forfeitures were for both pay and allowances.

[4] Appellant's assignment of error uses the word "rank," which we consider synonymous with "grade" in this opinion.

[5] Appellant personally raises issue (3) in accordance with *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982).

convening authority failed to take action as required under the applicable version of Article 60, UCMJ, 10 U.S.C. § 860, which we will address with issue (1). We have carefully considered issue (3), and find no discussion or relief is warranted. *See United States v. Matias*, 25 M.J. 356, 361 (C.M.A. 1987).

Finding no error materially prejudicial to a substantial right of Appellant, we affirm the findings and the sentence.[6]

## I. BACKGROUND

Appellant was tried for offenses involving his stepdaughter, AS, when she was between 14 and 15 years old. Appellant was convicted of penetrating her vulva with his finger and tongue, causing her to touch his penis with a sex toy, and showering naked and watching pornography with her, all on divers occasions.

## II. DISCUSSION

### A. Convening Authority's Post-Trial Decisions

#### 1. Additional Background

Appellant, through counsel, requested clemency from the convening authority in the form of disapproval of the reduction in grade. In the alternative, Appellant requested the convening authority defer the adjudged reduction in grade "until the date on which the sentence is approved by the convening authority." Finally, he requested the convening authority waive forfeiture of pay and allowances for the benefit of Appellant's biological daughter. Appellant stated his request for disapproval of his grade reduction was "solely" to benefit his daughter, as was his request for waiver of forfeitures. Appellant asked the convening authority to waive at least $500.00 per month, as that was the amount he owed in court-ordered monthly child support. In his requests to the convening authority, Appellant did not mention concerns he now raises on appeal about the conditions of confinement.

The convening authority signed his Decision on Action memorandum on 22 June 2020. The convening authority stated, *inter alia*:

> 2. I take the following action on the sentence in this case:
>
> a. The confinement is reduced from 13 years to 8 years.

---

[6] On 18 July 2021, in his assignments of error brief filed with the court, Appellant requested speedy appellate review of his case. This opinion was issued before the 18-month standard for a presumptively unreasonable delay in appellate review, set in *United States v. Moreno*, 63 M.J. 129, 142 (C.A.A.F. 2006).

b. The adjudged total forfeitures are disapproved.

3. I provided relief in this case to reduce the confinement in accordance with the pretrial agreement. I disapproved the adjudged total forfeitures upon request from [Appellant's] defense counsel based on [Appellant's ex-spouse's] need for continued support for their dependent child.

4. On 5 June 2020, [Appellant] requested deferment of the reduction in grade until the convening authority approves the sentence. That request is hereby denied.

5. . . . All of the automatic forfeitures are hereby waived for a period of six months, or release from confinement, or expiration of term of service, whichever is sooner, with the waiver commencing on 11 June 2020.[7] The total pay and allowances is directed to be paid to [Appellant's] ex-spouse . . . for the benefit of [Appellant's] dependent child.

The military judge signed the entry of judgment (EoJ) on 15 July 2020. The EoJ reflects, *inter alia*, the convening authority's decisions to deny Appellant's deferment request and grant Appellant's requests to disapprove adjudged forfeitures and waive automatic forfeitures. It also indicates the sentence, as modified by the convening authority, was a dishonorable discharge, confinement for eight years, and reduction to the grade of E-1. Trial defense counsel received the Decision on Action memorandum on 22 June 2020 and the EoJ on 16 July 2020, and did not file a post-trial motion for correction of either document. *See* Rule for Courts-Martial (R.C.M.) 1104(b)(1)(E) and (F).

Following Appellant's submission of assignments of error, we granted the Government's motion to attach six documents, one of which was a declaration from the convening authority, dated 19 July 2021.[8] In that declaration, the convening authority explained his reasons for denying Appellant's request to defer reduction in grade:

---

[7] Forfeiture of Appellant's pay and allowances would have begun 14 days after the sentence was adjudged. *See* Article 57, UCMJ, 10 U.S.C. § 857.

[8] We consider the declaration necessary to resolve an issue "raised by the record but [ ] not fully resolvable by the materials in the record," *United States v. Jessie*, 79 M.J. 437, 442 (C.A.A.F. 2020), namely, the convening authority's decisions with respect to deferral and action on the sentence. The other documents the Government attached relate to the conditions of Appellant's post-trial confinement. We also granted Appellant's motion to attach documents about those conditions. We consider those documents as they relate to Appellant's Eighth Amendment and Article 55, UCMJ, 10 U.S.C. § 855, claims. *See id.* at 443–44.

> I denied the deferment request due to the nature of the offenses for which he was convicted, the sentence adjudged, and [Appellant's] character, family situation, and service record. Ultimately, [Appellant's] request did not demonstrate that the interests of [Appellant] and the community in deferral outweighed the community's interest in imposition of the punishment on its effective date. In addition, I had granted certain relief that I believed was appropriate for this case. In particular, I disapproved the adjudged total forfeitures and then waived the automatic forfeitures for a period of six months, or release from confinement, or expiration of term of service, whichever was sooner, with the waiver commencing on 11 June 2020. I directed the pay and allowances to his dependent child.

Additionally, the convening authority stated, "I did not disapprove the reduction in grade but I did disapprove the adjudged total forfeitures."

### 2. Denial of Appellant's Deferment Request

#### a. Omission of Reasons for Denial—Law and Analysis

To correct an "error in the action of the convening authority," a party may file a post-trial motion within five days of receiving the convening authority's action. R.C.M. 1104(b)(1)(F) and (b)(2)(B). If the military judge finds "any post-trial action by the convening authority is incomplete, irregular, or contains error," the military judge may return the action to the convening authority for correction. R.C.M. 1104(b)(2)(B)(i). A party may also file a post-trial motion to address "[a]n allegation of error in the post-trial processing of the court-martial." R.C.M. 1104(b)(1)(E).

Because the Defense did not move for correction of the Decision on Action memorandum in which the convening authority denied the request for deferral of reduction without explanation, we consider the issue forfeited. *See United States v. Gladue*, 67 M.J. 311, 313 (C.A.A.F. 2009). We review forfeited rights for plain error. *Id*. In analyzing for plain error, we assess whether (1) there was error; (2) it was plain or obvious; and (3) the error materially prejudiced a substantial right of the appellant. *See United States v. Kho*, 54 M.J. 63, 65 (C.A.A.F. 2000) (citation omitted). The Court of Appeals for the Armed Forces (CAAF) has stated that the convening authority's decision "must include the reasons upon which the action is based" in order to facilitate judicial review. *United States v. Sloan*, 35 M.J. 4, 7 (C.M.A. 1992), *overruled on other grounds*

*by United States v. Dinger*, 77 M.J. 447, 453 (C.A.A.F. 2018) (footnote omitted).[9] We will assume without deciding that case law required the convening authority in this case to include the reasons for denial of the request to defer reduction in grade, and that failure to do so was plain and obvious error.

We find Appellant has failed to demonstrate prejudice. The effect of the convening authority's decision was that, beginning on their effective date, all the automatic forfeitures of pay and allowances—which even at pay grade E-1[10] was over triple the amount Appellant owed in child support each month—was to be paid to Appellant's ex-spouse for the benefit of their child. Appellant has not shown how the convening authority's failure to detail his reasons for denial potentially affected Appellant's opportunity for a more favorable decision from the convening authority or relief upon appellate review. Having considered the totality of the record, we conclude Appellant has failed to demonstrate prejudice arising from the convening authority's failure to state his reasons when he denied the requested deferment.

#### b. Denial of Request

##### i) Law

Article 57(b)(1), UCMJ, 10 U.S.C. § 857(b)(1), authorizes a convening authority, upon application by an accused, to defer a reduction in grade and forfeiture of pay or allowances until the date judgment is entered. An accused seeking to have a punishment deferred "shall have the burden of showing that the interests of the accused and the community in deferral outweigh the community's interests in imposition of the punishment on its effective date." R.C.M. 1103(d)(2). The rule outlines several factors the convening authority may consider in determining whether to grant the request, including, *inter alia*, the nature of the offenses, the sentence adjudged, the effect of deferment on good order and discipline in the command, and the accused's character,

---

[9] Neither Article 57(b), UCMJ, nor R.C.M. 1103(d)(2) or its Discussion, state that the basis for denial should be in writing. We note once again "the CAAF has not repeated this requirement since *Sloan*, which it overruled on other grounds, and we question the necessity for this judicially created rule in today's post-trial landscape." *United States v. Carter*, No. ACM 39853, 2021 CCA LEXIS 2, at *22 n.15 (A.F. Ct. Crim. App. 7 Jan. 2021) (unpub. op.).

[10] Basic pay for E-1 in 2020 was $1,733.10 per month. *See* DoD 7000.14, *Financial Management Regulation*, Volume 7A, Chapter 1, *Basic Pay*, Table 1-10, *Monthly Rates of Basic Pay – Enlisted Members – Effective January 1, 2019* (May 2020), *available at* https://comptroller.defense.gov/Portals/45/documents/fmr/archive/07aarch/07a_01_May20.pdf.

mental condition, family situation, and service record. The action of the convening authority on the deferment request shall be in writing, included in the record of trial, and provided to the accused and military judge. *Id.*

We review a convening authority's denial of a deferment request for an abuse of discretion. R.C.M. 1103(d)(2); *United States v. Sloan*, 35 M.J. 4, 6 (C.M.A. 1992), *overruled on other grounds by United States v. Dinger*, 77 M.J. 447, 453 (C.A.A.F. 2018). When a convening authority fails to articulate reasons for denying a deferment request, we look for indications the convening authority considered relevant factors such as those in R.C.M. 1103(d)(2), or considered advice presented by the staff judge advocate or the special court-martial convening authority. *See, e.g.*, *United States v. Frantz*, No. ACM 39657, 2020 CCA LEXIS 404, at *57 (A.F. Ct. Crim. App. 10 Nov. 2020) (unpub. op.), *aff'd*, ___ M.J. ___, No. 21-0146, 2021 CAAF LEXIS 744 (C.A.A.F. 10 Aug. 2021). Additionally, relief may be warranted upon "credible evidence that a convening authority denied a request to defer punishment for an unlawful or improper reason . . . ." *United States v. Eppes*, No. ACM 38881, 2017 CCA LEXIS 152, at *43 (A.F. Ct. Crim. App. 21 Feb. 2017) (unpub. op.) (quoting *United States v. Zimmer*, 56 M.J. 869, 874 (A. Ct. Crim. App. 2002)), *aff'd*, 77 M.J. 339 (C.A.A.F. 2018).

### ii) Analysis

Appellant claims the convening authority abused his discretion by denying the request for deferral of reduction in grade, and claims he suffered prejudice as a result. Appellant claims "[t]he prejudice in this case—as compared to most others—can actually be quantified by showing the difference in dollars that would have been paid to [Appellant's] dependent had it been paid at E-5 pay instead of E-1 pay until the entry of judgment." In his reply brief, he clarifies that his "family could have received automatic forfeitures directed to them at the pay grade of E-5 vice E-1."

In his request to the convening authority, Appellant highlighted his responsibility to pay child support during his time in confinement and beyond. He did not directly address his burden under R.C.M. 1103(d)(2) to show that his and the community's interest in deferral "outweigh the community's interests in imposition of the punishment on its effective date." In the convening authority's post-trial declaration, he stated the factors he considered, all of which are included in R.C.M. 1103(d)(2). The record indicates no unlawful or improper purpose behind the convening authority's denial of the deferment. We find the convening authority did not abuse his discretion in denying Appellant's request to defer reduction in grade.

### 3. Decision on Action

#### *a. Law*

"The proper completion of post-trial processing is a question of law the court reviews de novo." *United States v. Zegarrundo*, 77 M.J. 612, 613 (A.F. Ct. Crim. App. 2018) (citing *Kho*, 54 M.J. at 65).

At the time the convening authority signed the Decision on Action memorandum in this case, Air Force Instruction (AFI) 51-201, *Administration of Military Justice*, Section 13D (18 Jan. 2019), advised Air Force convening authorities to grant relief as circumscribed by the applicable version of Article 60, UCMJ.[11] The instruction also equated "taking action" with "granting post-sentencing relief," explaining: "A decision to take action is tantamount to granting relief, whereas a decision to take no action is tantamount to granting no relief." AFI 51-201, ¶ 13.17.1.

Recently, the CAAF provided clear instruction to convening authorities exercising their authority under Article 60, UCMJ, 10 U.S.C. § 860. In *United States v. Brubaker-Escobar*, ___ M.J. ___, No. 20-0345, 2021 CAAF LEXIS 818 (C.A.A.F. 7 Sep. 2021) (per curiam), the CAAF considered the implications of a presidential executive order relating to changes to Article 60, UCMJ, in the Military Justice Act of 2016 (MJA). The executive order stated that if an accused is found guilty of at least one specification alleging an offense that was committed before 1 January 2019:

> Article 60 of the UCMJ, as in effect on the date of the earliest offense of which the accused was found guilty, shall apply to the convening authority . . . to the extent that Article 60:
>
> (1) requires action by the convening authority on the sentence;
>
> . . . .
>
> . . . or
>
> (5) authorizes the convening authority to approve, disapprove, commute, or suspend a sentence in whole or in part.

Exec. Order No. 13,825, § 6(b), 83 Fed. Reg. 9889, 9890 (8 Mar. 2018).

The CAAF first found the President had the authority to designate the effective dates of the MJA, then provided a clear signpost for convening authorities going forward:

---

[11] Specifically, AFI 51-201, ¶ 13.16, stated: "To determine the applicable version of Article 60, look at the date of the earliest offense resulting in a conviction. The version of Article 60 in effect on that date applies to the entire case."

> [I]n any court-martial where an accused is found guilty of at least one specification involving an offense that was committed before January 1, 2019, a convening authority errs if he fails to take one of the following post-trial actions: approve, disapprove, commute, or suspend the sentence of the court-martial in whole or in part.

*Brubaker-Escobar*, 2021 CAAF LEXIS 818, at *1.

The CAAF applied its holding to the case before it:

> We therefore further hold that the convening authority erred by taking "no action" in this case pursuant to the new Article 60a rather than by taking one of the specified actions required under the old Article 60. However, we conclude that the convening authority's determination did not constitute plain error.

*Id.* at *4. The court found the convening authority's failure to explicitly take one of those actions was a "procedural error." *Id.* at *2, 7–8. The court then noted: "Pursuant to Article 59(a), UCMJ, 10 U.S.C. § 859(a) (2018), procedural errors are 'test[ed] for material prejudice to a substantial right to determine whether relief is warranted.'" *Id.* at *8 (alteration in original) (quoting *United States v. Alexander,* 61 M.J. 266, 269 (C.A.A.F. 2005)). Ultimately, the CAAF tested for prejudice and, finding none, affirmed the sentence. *Brubaker-Escobar*, 2021 CAAF LEXIS 818, at *8.

### b. Analysis

In light of *Brubaker-Escobar*, we find the convening authority erred when he did not explicitly "approve, disapprove, commute, or suspend the sentence in whole or in part" as required by Article 60(c)(2)(A) and (B), UCMJ, *Manual for Courts-Martial, United States* (2016 ed.). Specifically, he did not expressly act on the dishonorable discharge or reduction in grade. However, he implied approval of both: the former by directing post-confinement appellate leave and the latter by denying the requested deferral. Moreover, he specified the relief he was providing with respect to confinement was in accordance with the pre-trial agreement, which only limited the sentence by requiring the convening authority to approve no more than eight years' confinement.

Testing this error for prejudice, we find none. From our reading of the convening authority's Decision on Action memorandum and post-trial declaration, the convening authority knew he could disapprove the reduction in grade, and declined to do so. We can see from his declaration, in which he stated he "did not disapprove the reduction in grade" and "did disapprove the adjudged forfeitures," that the convening authority adhered to the Air Force's guidance on taking post-trial action by not mentioning those elements of the sentence which he was approving, and instead affirmatively stating he was taking "action"

only when granting sentence relief. Thus, we find no material prejudice to a substantial right of Appellant despite the procedural error.

## B. PTA Compliance—Withdrawal and Dismissal of Specifications

### 1. Additional Background

Appellant submitted a PTA offer to the convening authority, which the convening authority approved and accepted on 18 March 2020. As part of the PTA, the convening authority agreed to take two actions: (1) "approve a sentence in accordance with the limitations set forth in Appendix A,"[12] and (2) "dismiss with prejudice Specifications 3, 5, and 7." In consideration, Appellant agreed to five material terms: to plead guilty to the remaining specifications and the Charge, to waive motions that may be waived under the Rules for Courts-Martial, to waive his right to a trial by members, to enter into a reasonable stipulation of fact, and to "agree to the in-person production of only one non-local witness at the Government's expense." By its own terms, the PTA was binding on the Government and Appellant.

After finding Appellant guilty in accordance with his pleas, the military judge asked the Government whether it would be "moving forward" with the specifications to which Appellant pleaded not guilty. The assistant trial counsel (ATC) replied in the following exchange with the military judge (MJ):

> ATC: No, Your Honor. In accordance with the pretrial agreement, we will be moving to withdraw and dismiss Specifications 3, 5, and 7 of the Charge.
>
> MJ: All right. Then, at this time, if you would line out and mark on the original charge sheet those specifications as withdrawn and dismissed *with prejudice*.

(Emphasis added).

The military judge asked that one of the trial counsel, one of the defense counsel, and Appellant initial the portions of the charge sheet reflecting withdrawal and dismissal of those specifications. Trial counsel said, "Your Honor, I have lined through Specifications 3, 5, and 7; written 'withdrawn and dismissed on 27 May 2020' on each, and included my initials." Defense counsel and Appellant then also initialed the strike-through of Specifications 3, 5, and 7, and the language "withdrawn and dismissed on 27 May 2020." Neither counsel for the Government nor the Defense mentioned that the strike-through

---

[12] Appendix A contained only one limitation on the sentence, namely that the convening authority would "disapprove any confinement exceeding eight (8) years."

failed to include the language "with prejudice" as stated in the PTA and as the military judge had directed.

Moreover, the Statement of Trial Results (STR) and EoJ do not indicate the dismissal of Specifications 3, 5, and 7 was "with prejudice."

**2. Law**

"A pretrial agreement in the military justice system establishes a constitutional contract between the accused and the convening authority." *United States v. Smead*, 68 M.J. 44, 59 (C.A.A.F. 2009) (citing *United States v. Lundy*, 63 M.J. 299, 301 (C.A.A.F. 2006)). "In a criminal context, the [G]overnment is bound to keep its constitutional promises . . . ." *Lundy*, 63 M.J. at 301. Whether the Government has complied with a term of the PTA is a mixed question of fact and law. *Id.* "In the event of noncompliance with a material term, we consider whether the error is susceptible to remedy in the form of specific performance or in the form of alternative relief agreeable to the appellant." *Smead*, 68 M.J. at 59 (citation omitted).

**3. Analysis**

The record indicates Appellant fully complied with the PTA, but the convening authority did not. Trial counsel failed to note on the charge sheet that Specifications 3, 5, and 7 were "withdrawn and dismissed with prejudice." The STR should have indicated the specifications were dismissed "with prejudice." In light of these omissions, the convening authority could have clarified that the withdrawn specifications were dismissed with prejudice when he issued the Decision on Action memorandum, but he did not. Echoing the charge sheet and STR, the EoJ does not state Specifications 3, 5, and 7 were withdrawn and dismissed *with prejudice*.

Whether specifications are dismissed with or without prejudice pursuant to a PTA would be important if the Government reinstated those specifications. *See generally United States v. Cook*, 12 M.J. 448 (C.M.A. 1982). We find Appellant is due the benefit of his bargain.[13] The remedy is specific performance of this term of the PTA. In our decree we therefore dismiss with prejudice the withdrawn Specifications 3, 5, and 7 of the Charge.

**C. Conditions of Post-Trial Confinement**

Appellant argues he is entitled to relief due to the conditions of his confinement at the Lowndes County Jail (LCJ). Appellant categorized his complaints

---

[13] We come to this conclusion even though trial defense counsel and Appellant did not notice these errors at trial nor ask for a post-trial hearing, Appellant did not raise the issue on appeal, and Appellant benefited greatly from the PTA provision limiting confinement, resulting in his 13-year sentence being reduced to 8 years.

at LCJ as follows: insufficient food and water, cell conditions and lack of sanitation, lack of fresh air and recreation facilities, and insufficient medical care. For reasons explained below, our analysis will focus on Appellant's complaint of insufficient medical care.

### 1. Additional Background

Appellant began his sentence to confinement on 27 May 2020 at LCJ. In Appellant's 5 June 2020 clemency request to the convening authority, Commander, Ninth Air Force (9 AF/CC), Appellant did not mention the conditions of his confinement.

On 15 December 2020, after Appellant's case was docketed with this court, Appellant's appellate defense counsel submitted to the 23d Wing Commander (23 WG/CC) at Moody Air Force Base (AFB) an "informal complaint under Article 138, UCMJ." He explained he submitted it to the installation commander because the wrongs arose from Appellant's incarceration at LCJ, and because Appellant was incarcerated there per a memorandum of agreement (MOA) between Moody AFB and LCJ. Appellate defense counsel requested relief for Appellant as follows: (1) three-to-one credit for each day confined at LCJ; (2) prompt medical care free of charge; (3) prescription medication on time, as prescribed; (4) confidential calls to his defense attorney, free of charge and upon request; and (5) living accommodations meeting basic sanitary requirements, including the removal of black mold. To detail Appellant's complaints, attached was a memorandum for record (MFR) from an appellate defense paralegal summarizing a conversation between Appellant and his appellate defense counsel.[14] Appellate defense counsel also attached a copy of the MOA signed by 23 WG/CC.

In this appeal, Appellant attached an unsigned and undated[15] memorandum from 23 WG/CC, purporting to grant Appellant's requested relief for (2)–(5) above, but denying confinement credit. Attached to this memo were responses to Appellant's informal complaints from representatives of LCJ.

---

[14] This unsworn memorandum conflicts with some of the matters in Appellant's sworn declaration to this court. We consider this unsworn memorandum only inasmuch as it was part of Appellant's attempts to have his complaints addressed. *See* JT. CT. CRIM. APP. R. 23(b) ("If a party desires to attach a statement of a person to the record for consideration by the Court on any matter, such statement shall be made either as an affidavit or as un unsworn declaration under penalty of perjury . . . .").

[15] The attachments to this memorandum are dated between 28 December 2020 and 11 January 2021. Additionally, as part of its motion to attach the memorandum to the record, appellate defense counsel represented that the memorandum was dated 12 January 2021.

Four days before Appellant's transfer from LCJ to NCBM, on 25 January 2021 appellate defense counsel submitted a formal complaint under Article 138, UCMJ, to 9 AF/CC. The formal complaint attached the informal complaint to 23 WG/CC, 23 WG/CC's response, and their respective attachments. The substance of Appellant's formal Article 138 complaint was the same as his informal complaint.

In his appeal, Appellant submitted a sworn declaration detailing the conditions of his confinement at LCJ. Appellant stated: "All my medications were taken away from me when I arrived at LCJ." He claimed after this, he was "not given any medication or evaluated by any medical professional . . . for [his] first two weeks at LCJ." When he was able to see a provider a month after arriving at LCJ, he was given a "two-week dosage" and was required to pay for refills. Appellant also stated that he was diagnosed with a condition "with the same symptoms of frostbite during cold temperatures" prior to his confinement, and that when confined, he was not allowed to block the air-conditioning vent in his cell. Accordingly, he "asked the medical providers for an extra blanket to sleep with, but was denied because [he] didn't meet the requirements." Finally, Appellant explained the lack of aftercare he received for a head wound:

> When it was time to clean and redress my head wound, I was denied medical treatment by one of the correctional officers. The nurses asked him to bring me to Medical after he performed and cleared final count. I reminded [the correctional officer] during count and he told me that he wasn't going to take me to receive any medical treatment. After filing a grievance against the officer, he came the next morning, only giving me some Band-Aids and an alcohol pad to treat myself.

Appellant touched on many of these issues in grievances he filed with the LCJ and in his Article 138 complaint. Appellant filed a grievance about his head-wound care, and recounted a version of this incident via the MFR attached to his Article 138 complaint.[16] He did not file a grievance to see a medical provider for an evaluation. However, he did file a grievance after he had been incarcerated at LCJ for about one month, stating: "I had left[-]foot surgery in Februray [sic] 2020. My foot is still recovering. I am requesting to recieve [sic] cushioned shoes." The MFR also noted that "it can take two weeks to see the prison medical provider" and that Appellant was "being charged $5.00 per visit for medical care." One of Appellant's grievances related to medication: he said he was "having a reaction" to his blood-pressure medication. In his Article

---

[16] According to the MFR, "[Appellant] had an incident where he passed out and cracked his head on a table. He was not taken to medical for head dressing, but was given the dressing by a guard and told to do it [himself] using 'moldy' water to clean the wound."

138 complaint, he noted the delay in initially getting medications, and that the formulation and dose of medication "did not work as effectively." He filed a grievance to get a blanket, and was directed to see a medical provider. He did not file a grievance after the medical provider denied his request for a blanket, but he did mention this denial in his Article 138 complaint.

**2. Law**

Under this court's Article 66(d), UCMJ, 10 U.S.C. § 866(d), mandate to approve only so much of the sentence as we find "correct in law," we cannot affirm "an unlawful sentence, such as one that violates the prohibition against cruel and unusual punishment in the Eighth[17] Amendment and Article 55, UCMJ[, 10 U.S.C. § 855]." *United States v. Jessie*, 79 M.J. 437, 440 (C.A.A.F. 2020) (citing *United States v. Erby*, 54 M.J. 476, 478 (C.A.A.F. 2001)).

"In general, we apply the [United States] Supreme Court's interpretation of the Eighth Amendment to claims raised under Article 55, UCMJ, except where legislative intent to provide greater protections under Article 55, UCMJ, is apparent." *United States v. Gay*, 74 M.J. 736, 740 (A.F. Ct. Crim. App. 2015) (citation omitted), *aff'd*, 75 M.J. 264 (C.A.A.F. 2016). To demonstrate a violation of the Eighth Amendment, an appellant must show:

> (1) an objectively, sufficiently serious act or omission resulting in the denial of necessities; (2) a culpable state of mind on the part of prison officials amounting to deliberate indifference to [his] health and safety; and (3) that he has exhausted the prisoner-grievance system . . . and that he has petitioned for relief under Article 138, UCMJ . . . .

*United States v. Lovett*, 63 M.J. 211, 215 (C.A.A.F. 2006) (omission and second alteration in original) (internal quotation marks and citations omitted). "The Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones." *Id.* at 832 (internal quotation marks and citations omitted).

"Denial of adequate medical attention can constitute an Eighth Amendment or Article 55 violation." *United States v. White*, 54 M.J. 469, 474 (C.A.A.F. 2001) (citing *United States v. Sanchez*, 53 M.J. 393, 396 (C.A.A.F. 2000)). However, the standard is "reasonable" medical care rather than "perfect" or "optimal" care. *Id.* at 475. (citation omitted). The Eighth Amendment prohibits "deliberate indifference to serious medical needs of prisoners," whether manifested by prison guards "intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976) (citations omitted). The Supreme Court

---

[17] U.S. CONST. amend. VIII.

"has long made clear the standard for claims alleging failure to provide medical treatment to a prisoner—'deliberate indifference to serious medical needs.'" *Ziglar v. Abbasi*, ___ U.S. ___, 137 S. Ct. 1843, 1864 (2017) (quoting *Estelle*, 429 U.S. at 104). "Deliberate indifference" requires that the responsible official must be aware of an excessive risk to an inmate's health or safety and disregard that risk. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). "[I]t is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Id.* at 842 (citation omitted). One may infer "a prison official knew of a substantial risk from the very fact that the risk was obvious." *Id.* (citation omitted). However, "prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment . . . ." *Id.* at 844.

A confinee must seek administrative relief prior to invoking judicial intervention to redress concerns regarding post-trial confinement conditions. *See United States v. Wise*, 64 M.J. 468, 471 (C.A.A.F. 2007) (citations omitted); *White*, 54 M.J. at 472. "This generally means that the prisoner will have exhausted the detention center's grievance system and petitioned for relief under Article 138, UCMJ." *United States v. Henry*, 76 M.J. 595, 610 (A.F. Ct. Crim. App. 2017). "Exhaustion requires Appellant to demonstrate that two paths of redress have been attempted, each without satisfactory result," specifically, the prisoner-grievance system and the Article 138 complaint process. *Wise*, 64 M.J. at 471.

### 3. Analysis

We have considered whether a post-trial evidentiary hearing is required to resolve any factual disputes between Appellant's declaration and the declarations submitted by the Government. *See United States v. Ginn*, 47 M.J. 236, 248 (C.A.A.F. 1997); *United States v. DuBay*, 37 C.M.R. 411, 413 (C.M.A. 1967). We find a hearing unnecessary in this case. To the extent the two documents are inconsistent, resolving any factual disputes in Appellant's favor would not result in relief to Appellant. *See Ginn*, 47 M.J. at 248.

Regarding Appellant's complaints regarding food and water, the conditions of his cell, and lack of outdoor time and recreation facilities, Appellant has neither claimed nor demonstrated a culpable state of mind on the part of prison officials. Moreover, we conclude from our review of the declarations from prison officials that they were not indifferent to Appellant's health or safety.[18] Thus, Appellant has not satisfied all three prongs of *Lovett* for these complaints.

Appellant does, however, imply a culpable state of mind in relation to his complaint regarding inadequate medical care. We find the conduct of prison

---

[18] For example, prison officials knew that water was leaking into cells due to a roof leak. They rehoused inmates in the affected cells and replaced the roof.

officials as alleged by Appellant did not constitute "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *See Estelle*, 429 U.S. at 106. Appellant has not demonstrated that prison officials understood Appellant's needs to be significantly serious and that they ignored those needs with deliberate indifference. Moreover, Appellant does not allege he suffered harm,[19] nor was at substantial risk of serious harm, from any of these issues. While we can presume these issues caused Appellant some discomfort and distress, more is required before we can find violations of the Eighth Amendment and Article 55, UCMJ.

Considering the entire record, and resolving any factual contradictions in Appellant's favor, we find prison officials were not indifferent to Appellant's health and safety. Appellant has not satisfied all three prongs of *Lovett* for his complaints of Eighth Amendment and Article 55, UCMJ, violations. We find no relief is warranted.

### III. CONCLUSION

Specifications 3, 5, and 7 of the Charge that were withdrawn by the convening authority are **DISMISSED WITH PREJUDICE**. The findings and sentence as entered are correct in law and fact, and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(d), UCMJ, 10 U.S.C. §§ 859(a), 866(d). Accordingly, the findings and the sentence are **AFFIRMED**.[20]

FOR THE COURT

CAROL K. JOYCE
Clerk of the Court

---

[19] The MFR from the appellate defense paralegal stated that Appellant said he suffered harm from not having his medications. However, Appellant did not make this assertion in his sworn declaration to this court.

[20] As noted by Appellant, the STR failed to include the command that convened the court-martial as required by R.C.M. 1101(a)(3), but he does not claim he was prejudiced by this omission. Nonetheless, the EoJ contains this information. We find no prejudice from this error. *See United States v. Moody-Neukom*, No. ACM S32594, 2019 CCA LEXIS 521, at *2–3 (A.F. Ct. Crim. App. 16 Dec. 2019) (unpub. op.) (per curiam).